UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>EBENEZER K. HOWE IV, and PHI<br>DEVELOPMENT LLC ,<br><br>                Defendants. | Case No. 2:19-cv-00421-DCN-CWD<br><br>**REPORT AND RECOMMENDATION**<br>**RE: Dkt. Nos. 194, 197, 211**<br><br>**MEMORANDUM DECISION AND**<br>**ORDER**<br>**RE: Dkt. Nos. 198, 201, 210, 212, 214** |

**INTRODUCTION**

Pending before the Court are cross motions for summary judgment filed by the United States of America ("United States") and Ebenezer K. Howe IV ("Howe"), along with five ancillary motions Howe filed related to discovery and evidentiary issues. (Dkt. 194, 197, 198, 201, 210, 211, 212, 214). This litigation is now at a stage where the Court will issue a case dispositive order on the claims and defenses asserted by the parties pursuant to Fed. R. Civ. P. 56.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented, and that the decisional process would not be aided by oral argument. Accordingly, the Court will decide the motions on the written record.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 1**

Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court will recommend that the United States' motion for summary judgment on Claims One and Five of the Complaint (Dkt. 194) be granted, and Howe's cross-motion for summary judgment, as amended (Dkt. 197, 211), be denied. As there is no basis for Howe's other non-dispositive motions, they will be denied. (Dkt. 198, 201, 210, 212, 214.)

## FACTS

The Court limits its presentation of the procedural history and the facts to those necessary for the resolution of the core issues presented by the parties' motions for summary judgment: (1) whether Howe states a legally cognizable affirmative defense that would defeat the United States' motion as a matter of law; and, (2) whether the United States has carried its burden to establish it is entitled to judgment as a matter of law.

### 1.    Procedural History

On October 29, 2019, the United States filed a complaint against Howe and PHI Development LLC ("PHI"), to: (1) reduce to judgment the outstanding federal tax assessments against Defendant Ebenezer K. Howe IV; (2) determine that a parcel of real property (the "Subject Property"),[1] located in Boundary County, Idaho,…is held by PHI Development LLC, a nominee or alter ego of Mr. Howe; (3) foreclose federal tax liens on the Subject Property; and (4) sell the Subject Property, and distribute the proceeds from such sale in accordance with the Court's findings as to the validity and priority of the

---

[1] The Subject Property is identified as 2099 Katka Road, Bonners Ferry, Idaho 83805. Compl. ¶ 5.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 2**

liens and claims of all parties. Compl. (Dkt. 1.) The action was commenced pursuant to

26 U.S.C. §§ 7401 and 7403 at the direction of the Attorney General of the United States,

with the authorization and at the request of the Secretary of the Treasury, acting through

his delegate, the Chief Counsel of the Internal Revenue Service (IRS). *Id.*

     Throughout these proceedings, Howe has contested the Court's jurisdiction over

this matter, and he has filed numerous motions seeking to dismiss the Complaint. (*See,*

*e.g.*, Dkt. 10, 11, 18, 19, 20, 21, 35.) Howe asserted the Court lacked subject matter

jurisdiction because the United States is allegedly involved in a fraudulent tax assessment

scheme.[2] (Dkt. 47.) On April 10, 2020, the Court issued a report recommending that

Howe's motion to dismiss be denied. (Dkt. 47.) The Court explained that it had subject

matter jurisdiction because the Complaint cited several federal statutes as the basis for the

Court's jurisdiction. (Dkt. 47.) On September 23, 2020, Chief District Judge David C.

Nye issued an order adopting the Court's report and recommendation in its entirety and

ordering Howe to file an answer to the complaint in compliance with Fed. R. Civ. P.

10(b) and 12(a)(4)(A) and (B). (Dkt. 59.)

     When the Complaint remained unanswered, the United States filed a motion for

entry of default. (Dkt. 74.) An answer was later filed on August 20, 2021, which Howe

filed "under duress." (Dkt. 82.) However, PHI did not appear through an attorney of the

---

[2] The Court elaborates on this alleged scheme in the context of the parties' summary judgment motions.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 3**

bar of the Court, resulting in entry of default by the Clerk against PHI for failure to plead or otherwise defend. (Dkt. 83.)[3]

The Court held a scheduling conference via telephone on October 27, 2021, and issued a scheduling order. (Dkt. 100, 101.) Discovery proceeded.

On May 20, 2022, the United States filed a motion for judgment on the pleadings as to Claim Two of the Complaint. (Dkt. 140, 142, 144.) Claim Two sought a declaratory judgment that PHI is the nominee or alter ego of Howe. On August 10, 2022, the Court recommended that the United States' motion for judgment on the pleadings be granted as to Claim Two. (Dkt. 176.) On March 2, 2023, District Judge Nye adopted the report and recommendation in its entirety. (Dkt. 192.)[4]

Thereafter, the United States filed its motion for summary judgment on March 9, 2023. (Dkt. 194.) Howe filed a cross-motion seeking summary judgment on his affirmative defense, which was followed by a motion to amend/correct the cross-motion. (Dkt. 197, 211.)[5]

Howe has also filed the following motions: Motion to Compel IRS Expert Marler to Provide Source Code & Testify as to IRS Use of Three IMF Codes (Dkt. 198);

---

[3] The Court informed Howe that the failure to obtain counsel for PHI Development, LLC, of which he is the sole member, would result in the Clerk entering default against that entity without further notice. (Dkt. 75, 78.)

[4] Howe filed numerous motions and appeals throughout the course of these proceedings. The Court will not summarize the exhausting procedural history further, as it is fully set forth in the Court's docket and in its various orders. Rather, the Court sets forth only the procedural history relevant to its consideration of the pending motions.

[5] Claims Three and Four of the Complaint seek a determination that any claim or interest by PHI in the Subject Property is fraudulent or nonexistent under Idaho law as a fraudulent transfer, either under Idaho Code §§ 55-913(1)(a), 55-913(a)(b), or 55-914. Claims Three and Four are not before the Court on the present motions.

Supplemental Motion to Compel IRS Expert Bradley Marler to Provide….& Testify

[Doc. 198] With Exh. And Declaration in Support (Dkt. 201); Defendant's Motion to

(Briefly) Re-Open Discovery (Dkt. 210); Motion Pursuant to FRE 701 to Supplement &

Amend My Opposition [Doc. 202] to Gov't Motion for Sum Judg. [Doc. 194, (with

Motion for Leave to File) With Exhibits & Declaration in Support (Dkt. 212); and

Motion to Reconsider Motion Moratorium & to Allow Motion to Strike Marler

Declaration, [194-5] (Dkt. 214).[6]

## 2.    Undisputed Facts

Howe has never filed a 1040A return in his life. (Dkt. 11 at 6; 140 at 1 n.1; 212.)

Howe has never made an election requesting that the IRS prepare a substitute income tax

return, or a 1040A return, on his behalf. (Dkt. 212.) Howe does not dispute that he has

not filed a federal income tax return for tax years 2005, 2006, 2008, 2009, 2010, 2011,

2012, and 2013, which are the tax years identified in the Complaint.

PHI has never appeared in this matter, and the Clerk entered default. (Dkt. 84.)

Howe's motion to set aside the default was denied. (Dkt. 91.) PHI is the nominee or alter

ego of Howe. Mem. Dec. (Dkt. 192.) Howe dissolved PHI and asserts that he owns the

Subject Property. (Dkt. 82, at ¶¶ 4–6, 10–16, 28–29, 31–37, 40, 48, 50–52, 57, 59, 63,

75–76, 78–84.)

---

[6] In Docket No. 214, Howe simultaneously requested that the Court withdraw its order prohibiting the
filing of further motions, and to strike the Declaration of Bradley Marler. The Court declined to
reconsider its prior order regarding motion practice, but did allow the motion to strike, as articulated in
Docket No. 214, to stand. (Dkt. 215.)

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER  - 5**

The Internal Revenue Service learned Howe earned income during tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013. Marler Decl., Ex. D (wage and income transcripts). (Dkt. 194-9.) Beginning in 2009, the IRS opened examinations into Howe's income, and thereafter prepared substitute returns. Marler Decl., Ex. E. (Dkt. 194-10.) IRS records establish Howe realized more than $770,000 in wages, nonemployee compensation, or both, during these years. Marler Decl. Exs. D, E.

The IRS sent the substitute returns to Howe via U.S. Mail, requesting that he either accept the amounts, dispute the amounts, or file his own completed and signed tax returns. Marler Decl. Ex. E. (Dkt. 194-10.) Howe did not take any action. Thereafter, the IRS sent Howe statutory Notices of Deficiency, which explained how the deficiencies were determined and instructed Howe to petition the Tax Court within 90 days should he wish to contest the amounts. Marler Decl. Ex. F. (Dkt. 194-11.) Included within these notices were Forms 4549 and 886-A, which explained certain adjustments the IRS intended to make. Howe did not file a petition with the Tax Court challenging the proposed tax assessments. Accordingly, the proposed assessments became final. Ex. 4. (Dkt. 194-4.)

The IRS took the following actions on the following dates for each year at issue:

| Tax Year | Exam Opened (TC 424) | Exam / SFR Commenced (TC 420) | SFR Completed (TC 570) | SFR Notice Sent | Notice of Deficiency Sent | Assessment Date (TC 300) |
|---|---|---|---|---|---|---|
| 2005 | 9/15/2009 | 9/24/2009 | 10/5/2009 | 10/19/2009 | 12/28/2009 | 10/11/2010 |
| 2006 | 9/15/2009 | 9/24/2009 | 10/5/2009 | 10/19/2009 | 12/28/2009 | 6/7/2010 |
| 2008 | 12/7/2010 | 12/16/2010 | 12/27/2010 | 6/13/2011 | 8/15/2011 | 2/6/2012 |
| 2009 | 9/21/2011 | 9/29/2011 | 10/10/2011 | 10/24/2011 | 1/9/2012 | 5/28/2012 |
| 2010 | 8/28/2013 | 8/30/2013 | 9/16/2013 | 11/18/2013 | 2/18/2014 | 7/7/2014 |
| 2011 | 11/5/2015 | 11/13/2015 | 11/30/2015 | 2/8/2016 | 4/11/2016 | 9/12/2016 |
| 2012 | 11/5/2015 | 11/13/2015 | 11/30/2015 | 2/8/2016 | 4/11/2016 | 9/12/2016 |
| 2013 | 11/5/2015 | 11/13/2015 | 11/30/2015 | 2/8/2016 | 4/11/2016 | 9/16/2016 |

Ex. 6, App. B. (Dkt. 194-14.)

Thereafter, a duly authorized delegate of the Secretary of the Treasury made timely federal tax assessments against Howe for unpaid federal income taxes for the years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013, as follows:

| Tax Year | Type of Tax | Assessment Date | Unpaid Balance as of October 31, 2019 | Unpaid Balance as of March 9, 2022 |
|---|---|---|---|---|
| 2005 | 1040 | 10/11/2010 | $9,957.34 | $11,412.86 |
| 2006 | 1040 | 6/7/2010 | $4082.62 | $4,792.09 |
| 2008 | 1040 | 2/6/2012 | $23,044.00 | $26,476.54 |
| 2009 | 1040 | 5/28/2012 | $2,102.62 | $2,409.96 |
| 2010 | 1040 | 7/7/2014 | $9.918.62 | $11,368.47 |
| 2011 | 1040 | 9/12/2016 | $146,214.46 | $167,587.35 |
| 2012 | 1040 | 9/12/2016 | $145,495.28 | $166,763.04 |
| 2013 | 1040 | 9/12/2016 | $2,970.42 | $3,198.29 |
| Total | | | $343,605.36 | $394,008.60 |

Ex. 4; Marler Decl. ¶ 16; Ex. G. (Dkt. 194-4, 194-12.) For each of the tax years set forth above, the United States has provided a "Certificate of Official Record" certifying that the documents are "true Form 4340, Certificate[s] of assessments payments, and other specified matters" for Howe covering the individual income tax assessed for the tax period ending on December 31 of each tax year set forth above. (Dkt. 194-4.)

Revenue Officer Bradley Marler submitted a declaration authenticating the documents attached to his declaration, representing that they are true and correct copies of IRS records. (Dkt. 194-5.) These records show a breakdown of the unpaid, outstanding

federal income taxes, penalties, and interest assessed against Howe for the tax years at issue as of March 9, 2022. Marler Decl. Ex. G (INTSD Printouts). (Dkt. 194-12.)

The IRS recorded the following Notices of Federal Tax Liens with the Boundary County Recorder in Bonners Ferry, Idaho as follows:

1.      Serial No. 232780316 (Reception No. 268761), recorded against Mr. Howe on October 17, 2016, for tax years 2006, 2011, 2012, and 2013.

2.      Serial No. 291043817 (Reception No. 272785), recorded against Mr. Howe on January 3, 2018, for tax years 2005, 2008, 2009, and 2010.

3.      Serial No. 297953318 (Reception No. 273336), recorded against PHI Development as Mr. Howe's nominee on March 5, 2018, for all tax years at issue. Marler Decl. Ex. H. (Dkt. 194-13.)

Howe has not presented evidence contesting the amounts of the tax assessments or the validity of the liens. Instead, Howe relies entirely upon his affirmative defense that the United States is engaged in a fraudulent, unlawful scheme to falsify documents and collect income tax he claims he does not owe on the grounds that the payment of income tax is voluntary.

## SUMMARY JUDGMENT STANDARD

Howe, who has proceeded pro se throughout these proceedings, may not be treated more favorably than a party with an attorney representing them, and he is therefore held to the same standard as a represented litigant. *Jacobsen v. Filler*, 790 F.2d 1361, 1364 (9th Cir. 1986).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

When cross-motions for summary judgment are filed, the Court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 10**

evaluated separately under [the] same standard."). In evaluating these motions, the Court "must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## ANALYSIS

### 1.    Howe's Affirmative Defense

Howe challenges his legal obligation to pay income tax. Howe essentially claims that the IRS falsifies records when it creates substitute returns, which in turn generates the appearance of a deficiency owed to the Treasury. Howe alleges that the United States has used these unlawful, falsified records in taking legal action against him to unlawfully deprive him of his property. (Dkt. 197, 211, 212.)

Howe's affirmative defense rests upon the following underpinnings: (1) the income tax is voluntary; (2) 26 U.S.C. § 6020(b) does not apply to income tax; (3) Form 1040A is a voluntary form, and must be elected by the taxpayer; (4) there is no federal statute granting the IRS the authority to prepare a 1040A return on behalf of an individual taxpayer; and, (5) the IRS's preparation of a 1040A return on Howe's behalf generates false records or documents reflecting that Howe filed a 1040A return, when he did not.

Based upon these assertions, Howe claims the IRS is engaged in widespread fraud, and that Revenue Officer Bradley Marler[7] has committed a crime. (Dkt. 199.) Howe contends that individual tax revenue agents who initiated certain steps, or entered certain

---

[7] Marler submitted a declaration in support of the United States' motion for summary judgment. (Dkt. 194-5.)

computer codes,[8] caused IRS computer systems to reflect that Howe filed a 1040A return when he disavows having done so himself. Howe insists that he owed nothing to the United States until the IRS falsified its records to reflect that he elected for the IRS to prepare substitute 1040A returns for him.

Accordingly, Howe contends no valid returns exist, and that every document upon which the IRS relies in support of its prima facie case was falsified as a result of using computer codes or digital entries in the IRS database to create such records. Howe therefore insists the IRS database reflects events that never occurred and documents that do not exist, and therefore falsely represents that the IRS possesses substitute income tax returns related to Howe. Thus, Howe asserts that the United States' documents should not be afforded any presumption of correctness, because the IRS lacked the authority to "create" them.[9]

Simply stated, Howe insists he owed nothing to the United States until Revenue Officer Marler directed that records be falsified, which records reflect that Howe elected to file Form 1040A, when he never made such an election or filed any income tax returns.

---

[8] Both Howe and the United States explain what these computer codes are, what happens when a certain code is entered into the IRS's computer system, and what electronic documents are created, or processes initiated, once particular codes are entered. The Court needs not belabor the point – it is irrelevant whether a button is pushed, a code entered, or a document is completed with a pen. The constant theme running through Howe's allegations is that an individual revenue agent within the IRS acted – whether it be via use of IRS's computer systems, or by filling out a form by hand – to generate a Form 1040A on Howe's behalf to reflect that he owes income tax. How this was done is not relevant to resolution of Howe's affirmative defense.

[9] Howe's challenges to the purported "irregularities" in the United States' documents submitted in support of its motion for summary judgment are nothing more than conclusory allegations. *See, e.g.*, Ex. A, IRS AMDISA 2011. (Dkt. 199-1.) Contrary to Howe's unsupported assertion, the presumption of regularity was not rebutted, as will be explained in sections 2 and 3.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER  - 12**

Howe has alternatively stated his affirmative defense throughout this litigation using the legal concepts of standing and unclean hands. For example, Howe has at various times asserted that the United States lacks standing because the IRS falsified government records. Howe claims also that IRS employees' misconduct (in the form of illegally creating electronic records reflecting receipt of documents that Howe never elected to file and which reflect that Howe owes income tax) constitutes "unclean hands." Based upon these arguments, Howe has claimed the Court lacks subject matter jurisdiction.

No matter how the legal argument is asserted, Howe's records falsification defense fails as a matter of law.[10] Howe's defense is grounded in a legal argument contesting the United States' authority to assess income tax. *See* Report and Recommendation at 14, n. 13. (Dkt. 176.) Howe contends that payment of income tax, and relatedly the filing of an income tax return, is voluntary. Thus, so the argument goes, any action taken by the IRS and its agents to prepare a substitute return is fraudulent or illegal, because there is no legal authority requiring Howe to file an income tax return or pay income tax; and there is no legal authority permitting the United States to prepare a substitute return.

Howe's first argument, that income tax is voluntary, has been uniformly rejected by every court which has considered it. *See, e.g., Colton v. Gibbs*, 902 F.2d 1462, 1463 (9th Cir. 1990); *Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990); *United States v.*

---

[10] The Court previously explained that Howe's affirmative defense is frivolous and fails as a matter of law. (Dkt. 176.) Nonetheless, the Court addresses it again in the context of summary judgment. Howe bears the burden of proof.

*Studley*, 783 F.2d 934, 937 (9th Cir. 1989); *Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n. 3
(9th Cir. 1988); *Olson v. United States*, 760 F.2d, 1003, 1005 (9th Cir. 1985); *see also
Curtis v. Comm'r*, 648 F. App'x 689, 690 (9th Cir. 2016) (affirming the imposition of a
penalty for taking frivolous positions regarding the constitutionality and mandatory
nature of income taxes); *Lonsdale v. United States*, 919 F.2d 1440, 1447 (10th Cir. 1990);
*United States v. Weldon*, No. 1:18-cv-01318-AWI-SKO, 2021 WL 242858 (E.D. Cal.
Jan. 25, 2021); Christopher S. Jackson, THE INANE GOSPEL OF TAX PROTEST:
RESIST RENDERING UNTO CAESAR– WHATEVER HIS DEMANDS, 32 Gonz.
L.Rev. 291 (1997).

Second, the IRS is authorized by statute to prepare substitute returns for those who
fail to do so, and thereby collect unpaid income tax. Congress enacted statutes which
require an individual to file a tax return if the individual's gross income exceeds a
particular amount of money. 26 U.S.C. § 6012(a) (requiring individuals having for the
taxable year gross income which exceeds the exemption amount to file a return of
income). Next, 26 U.S.C. § 6020(b) expressly applies to income tax. Section 6020(b)
authorizes the IRS to create substitute tax forms for non-filers. *See, e.g.*, 26 U.S.C. §
6020(b)(1) (authorizing Secretary of Treasury to make a return for non-filers); *id*. §
6020(b)(2) (authorizing the use of this substitute for return for all legal purposes); 26
C.F.R. § 301.6211–1 (providing that new return should indicate that non-filer paid zero
tax); *id*. § 301.6020–1 (setting out parameters for creation and use of substitute returns);
*see also Byers v. Comm'r*, 740 F.3d 668, 671 (D.C. Cir. 2014), *cert. denied*, 574 U.S. 872

(2014), *reh'g denied*, 574 U.S. 1067 (2014) (discussing relevant statutory and regulatory framework).[11]

      Put simply, 20 U.S.C. § 6020(b) authorizes the Secretary of the Treasury to execute an income tax return for any person who fails to file one. *Howe v. Roberts*, No. 1:21-CV-00175-BLW, 2021 WL 5122354, at *1 (D. Idaho Nov. 3, 2021), *aff'd*, No. 22-35349, 2023 WL 4418592 (9th Cir. July 10, 2023). *See also* 26 C.F.R. § 301.6211–1 ("If no return is made...for the purpose of the definition 'the amount shown as the tax by the taxpayer upon his return' shall be considered as zero."). Also, Internal Revenue Manual § 4.12.1.8.4[12] states that an IRS examiner may file a "substitute for return" for a taxpayer who fails to file a return for personal income tax. Section 4.12.1.8.2.1[13] confirms that § 6020(b) refers to a "substitute for return." 26 U.S.C. § 6020(b)(2) states that "[a]ny return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes."

      The authority granted to the Secretary of the Treasury to prepare an income tax return on behalf of a non-filer is delegated to IRS employees. *United States v. Bryan*, No. 2:22-CV-01962-DJC-AC, 2023 WL 6163974, at *2 (E.D. Cal. Sept. 21, 2023). Courts in the Ninth Circuit have repeatedly recognized the authority of the IRS and its agents to prepare substitute income tax returns for taxpayers who do not file a Form 1040. *See, e.g., Roat v. Comm'r*, 847 F.2d 1379, 1381 (9th Cir. 1988) (recognizing that "section

---

[11] The Court set forth the process by which the IRS creates substitute returns in its prior Report and Recommendation on Howe's motion to dismiss and the United States' motion for judgment on the pleadings. (Dkt. 176.)

[12] Found at https://www.irs.gov/irm/part4/irm_04-012-001#idm139937445627376.

[13] Found at https://www.irs.gov/irm/part4/irm_04-012-001#idm139937445626128.

6020(b)(1) simply endows the Secretary with '[a]uthority' to execute a return" on behalf of a taxpayer who does not file one himself); *Rapp v. Comm'r*, 774 F.2d 932, 935 (9th Cir. 1985); *In re Smith*, 527 B.R. 14, 18 (N.D. Cal. 2014), *aff'd*, 828 F.3d 1094 (9th Cir. 2016) ("Section 6020(b) refers to a return prepared by the IRS when the taxpayer fails to prepare a timely return or makes a false or fraudulent return, and the IRS must prepare the return based upon such information as it obtains itself."); *In re Ashe*, 228 B.R. 457, 460 (C.D. Cal. 1998) ("When a party fails to file a return, or willfully files a false or fraudulent return, the IRS shall prepare the return from its own information.").

Taken together, these statutory and regulatory provisions provide explicit legal authority to the IRS and its agents to create documents or electronic records upon which the United States may rely to enforce the payment of income tax by citizens who fail to do so.

Nonetheless, Howe asserts that the IRS has conceded that the tax system is voluntary. Surreply at 3. (Dkt. 204.) He relies upon a July 29, 1998 letter sent by Assistant Chief Counsel Rochelle Hodes to IRS District Counsel, as well as statements by Dwight E. Avis, head of the Alcohol and Tobacco Tax Division, made during the 83rd Congress in 1953, wherein these individuals stated that the income tax is voluntary. *Id.* at 3, 7. He argues that, unless and until a taxpayer "attests liability," the IRS has no statutory ability to summarily assess tax. *Id.* But comments from commissioners, attorneys, or other government officials about tax laws enacted by Congress do not abrogate those laws. Moreover, if Howe contends that such statements caused him to

misunderstand the tax law, Howe should have contested the United States' collection efforts in tax court. There is no evidence that he did so.

Howe alternatively contends that Section 6020(b) does not allow the IRS to prepare Form 1040A, because this form must be elected by the taxpayer. Mot. at 4, 6. (Dkt. 197.) Absent such an election by the taxpayer, Howe argues the IRS cannot prepare a 1040A return on his behalf and later rely upon this "false" document to collect income tax.[14] This argument is simply a restatement of his prior arguments and is without merit, as explained above. *See, e.g.*, 26 C.F.R. § 601.104(a), which states that "If a taxpayer fails to make a return it may be made for the taxpayer by a district director or other duly authorized officer or employee." Howe has cited no authority that the IRS's decision to use a Form 1040A is beyond the scope of Section 6020(b). *See, e.g., United States v. Lain*, No. 17-CV-113-ABJ, 2019 WL 2051960, at *5 (D. Wyo. Feb. 5, 2019), *aff'd*, 778 F. App'x 605 (10th Cir. 2019) (rejecting a taxpayer's claim that the IRS's assessments were invalid because the IRS elected to file Form 1040, as opposed to Form 1040A); *Wolffing v. United States*, 144 Fed. Cl. 626, 638 (2019) ("Congress has given the IRS the authority to prepare substitutes for return for any return required by any internal revenue law or regulation when the return is not filed.").

In sum, the Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a) and 7403. (Dkt. 1, 47, 59.) Howe's conclusory

---

[14] Form 1040A was used prior to 2018 by U.S. Taxpayers to file an annual income tax return, if they qualified to do so. https://www.irs.gov/forms-pubs/about-form-1040-a. *See also* Tres. Reg. § 1.6012-1(a)(6)(1983) (explaining that Form 1040A is an optional short form version of Form 1040 which may be used by certain taxpayers). For tax year 2018 and later, either Form 1040 or Form 1040-SR is used. https://www.irs.gov/forms-pubs/about-form-1040-a.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 17**

allegations of fraud or criminal conduct, which are based upon his contention that the United States lacks the authority to prepare substitute returns on his behalf or otherwise prepare returns for non-filers, is frivolous and without merit. 26 U.S.C. § 6020(b) expressly allows the United States to prepare substitute returns, whether that be by use of digital software or otherwise, to enforce the revenue laws. Other than conclusory allegations, Howe has not shown any sort of irregularity in the conduct of IRS officials. *See Christensen v. United States*, 733 F.Supp. 844, 852 (D. N.J. 1990) ("The conduct of internal revenue officials and their proceedings in assessing taxes is clothed with the presumption of regularity"), *aff'd*, 925 F.2d 416 (1990).

As the Court found in its previous Report and Recommendation (Dkt. 176), and reiterates again here, Howe's affirmative defense fails as a matter of law. The Court will recommend that Howe's cross-motion for summary judgment, as amended and supplemented, be denied. (Dkt. 197, 211, 212.)[15]

## 2.   Howe's Other Motions – Docket Nos. 198, 201, 210, 212, and 214

To the extent these motions restate, rehash, or otherwise attempt to argue the merits of Howe's meritless affirmative defense, the Court has considered them in its analysis in Section 1, above. Here, the Court addresses Howe's contentions that discovery must be reopened, and that Marler's declaration filed in support of the United

---

[15] Docket No. 212 is titled, "Motion Pursuant to FRE 701 to Supplement  & Amend My Opposition [Doc. 202] to Gov't Motion for Sum Judg. [Doc. 194, (with Motion for Leave to File). Dist. Idaho L. Rule 7.1 does not allow for "supplementation" of memoranda. Nonetheless, the Court considered the statements made therein in conjunction with its review of Howe's cross-motion for summary judgment. The evidentiary issues raised are considered in Section 2.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER  - 18**

States' motion for summary judgment, and the documents attached thereto, be stricken from the docket.

The theme running through the first three motions (Dkt. 198, 201, 210) is that discovery must be reopened to allow Howe to obtain additional, "case-dispositive" documents, and to depose Revenue Officer Marler concerning the illegal procedures used by the IRS to process elections by Howe (and other non-filers) for the IRS to prepare substitute 1040A returns. (Dkt. 198, 201, 210.) Howe's requests to reopen discovery, compel the production of documents, or depose Marler are untimely, as the fact discovery deadline of July 27, 2022, has long since passed. (*See* Dkt. 177 – explaining that the Court would not extend the discovery deadline). Further, Howe has not presented any new argument which would support modification of the Court's scheduling order at this juncture, and the Court previously declined to allow additional discovery when Howe raised similar arguments. (Dkt. 177.) For these reasons alone, the motions to reopen or compel discovery (Dkt. 198, 201, 210) may be denied.

Nonetheless, the Court will address Howe's arguments. Howe's insistence that the information he seeks by reopening discovery is "case-dispositive," and thus relevant to his defense, is without merit. To summarize, Howe claims Marler can explain the use by the IRS of certain transaction codes which, upon entry into IRS computer systems or software, create the false appearance that Howe elected for the IRS to prepare and file a substitute 1040A return on his behalf. (Dkt. 198.) Howe contends also that Marler has knowledge concerning the IRS's use of certain computer transaction codes that result in the falsification of the IRS's individual master file related to Howe, and thereby cause

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 19**

that file to reflect the occurrence of certain events—such as referral of a request to prepare a Form 1040A to the IRS examination division—when they did not actually occur. (Dkt. 198, 207.) And Howe seeks production of Form 5345, "Exam request," and Form 5546, "Exam request charge-out Form," which Howe contends will show how Marler manipulated the IRS computer system to cause it to reflect that Howe elected for the IRS to prepare substitute income tax returns for him when he did not make such an election. (Dkt. 207.)[16]

Nowhere in the record does the United States refute Howe's assertion that he did not request the IRS to prepare a substitute income tax return on Form 1040A on his behalf. Whether he did or did not is irrelevant. What Howe fails to accept, and which the Court has explained both above and ad nauseum in prior orders (*see*, *e.g.*, Dkt. 176, 177), is that the law authorizes the IRS and its agents to prepare a substitute return on behalf of a taxpayer who refuses to file one, and thereby to assess unpaid income tax. 26 U.S.C. § 6020; 26 C.F.R. § 301.6211–1(a); 26 C.F.R. § 301.6020–1(b)(1); 26 C.F.R. § 301.6020–1; *Byers v. C.I.R.*, 740 F.3d 668, 671 (D.C. Cir. 2014), *cert. denied*, 574 U.S. 872 (2014), *reh'g denied*, 574 U.S. 1067 (2014). How that process is initiated or thereafter proceeds – whether by entry of a computer code, completion of a paper form with a pen, or by some other means, is entirely irrelevant. What is relevant is that substitute returns prepared in the manner authorized by 26 U.S.C. § 6020(b) and further described by 26 C.F.R. §

---

[16] Howe requests also that Marler "answer…nine (9) simple questions" concerning tax year 2011, which all relate to the process by which the IRS generated Form 1040A for the years mentioned in the Complaint, and the ensuing events that led to the IRS's assessment of income tax. (Dkt. 207.) None of this information is relevant, for the reasons explained above.

301.6020–1 are "good and sufficient for all legal purposes." 26 C.F.R. § 301.6020–1(b)(3). *See also* Report and Recommendation at 15 – 21 (explaining IRS's enforcement mechanism and concluding Howe's records falsification defense fails as a matter of law). (Dkt. 176.)[17]

Stated simply, the fanciful scheme that Howe contends is fraudulent and criminal, and which Marler (or others) initiated by use of certain transaction codes entered into IRS computer systems or by the creation of other documents, is authorized by Congress, as well as by formal regulations of the Department of the Treasury. *DePolo v. Ciraolo-Klepper*, 197 F. Supp. 3d 186, 190 (D.D.C. 2016), *aff'd*, No. 16-5308, 2017 WL 4231143 (D.C. Cir. June 15, 2017). Thus, no amount of discovery would be relevant to Howe's affirmative defense.[18] *See* Mem. Dec. and Order. (Dkt. 177.) The Court will therefore deny the motions requesting to reopen discovery, compel the production of documents, and compel the testimony of Revenue Officer Marler. (Dkt. 198, 201, 210.)

Howe's next contention, raised in Docket No. 212 (and, to some extent, in Docket No. 201), is that the United States is improperly proffering Revenue Officer Marler's

---

[17] Howe's dramatic assertion that following the law in this manner "would appear to constitute the commission of a felony" is without merit. (Dkt. 207.)

[18] The Court notes that this same records falsification scheme was thoroughly debunked by the court in *Ellis v. Jackson*, 319 F.Supp.3d 23 (D.D.C. 2018). There, however, plaintiffs were attempting to enjoin the federal government's enforcement of the income tax against non-filers. Here, Howe attempts to use the same theory to thwart the United States' collection action against him.

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 21**

testimony, contained within his declaration, as an expert pursuant to Fed. R. Evid. 701.[19]

Rule 701 allows for the admission of lay testimony in the form of an opinion when such

testimony is rationally based on the witness's perception; helpful to clearly understanding

the witness's testimony or to determine a fact in issue; and not based on scientific,

technical, or other specialized knowledge within the scope of Rule 702. Marler was not,

however, designated as an expert, and the statements in his declaration were limited to

authenticating government records and explaining how the balance due from Howe for

unpaid outstanding federal income taxes for tax years 2005, 2006, 2008, 2009, 2010,

2011, 2012, and 2013 was computed. Marler Decl. ¶¶ 1 – 5, 11, 18. (Dkt. 194-5.)

   Marler's declaration was submitted in accordance with Fed. R. Evid. 901. This

rule provides that an item of evidence may be authenticated by a proponent who produces

evidence sufficient to support a finding that the item is what the proponent claims it is.

Fed. R. Evid. 901(a). Concerning public records, the proponent needs only provide

evidence that a document was recorded or filed in a public office as authorized by law;

or, a purported public record or statement is from the office where items of this kind are

kept. Fed. R. Evid. 901(b)(7). Here, Marler does just that – he identifies himself as a

---

[19] To the extent Howe contends his own statements qualify as opinion testimony by a lay witness under Fed. R. Civ. P. 701, he is mistaken. The Court accepted Howe's statement that he never filed a Form 1040A return in his life, and that he did not elect for the IRS to prepare a substitute return. These statements are contained within Docket No. 212, but also within others submitted in support of and in opposition to the motions for summary judgment, as discussed in Section 1. Howe's other statements set forth in Docket No. 212 based on "personal knowledge" simply reiterate his frivolous argument that no federal statute or regulation authorizes the IRS to prepare substitute returns; his conclusory statements that the United States' attorneys fabricated evidence; and that Revenue Officer Marler falsified records related to Howe. These unsupported assertions were offered to support Howe's frivolous "records falsification defense," and are not "lay opinions" as defined by Fed. R. Evid. 701.

Revenue Officer familiar with IRS records, and he authenticates Exhibits A – H as true and correct records maintained by the IRS concerning Howe's federal tax liabilities. His declaration therefore satisfies Rule 901.

Howe contends also that the United States' attorney "concealed" Marler, and "blocked" his access to IRS representatives with knowledge of IRS computer procedures. However, Howe's own verified statements belie his contention. Howe claims, on the one hand, that Revenue Officer Marler was concealed during discovery, thereby preventing Howe from "cross examining" Marler as to his use of IRS computer systems, but in the same paragraph Howe represents Marler "had been in repeated contact with [him] previous to initiation of this litigation." (Dkt. 212 at 5.) Marler was not, therefore, unknown to Howe, and Howe had every opportunity during the fact discovery period to depose Marler.[20]

Moreover, it appears during discovery that the United States provided Howe with copies of the documents attached to Marler's declaration, and an explanation of the procedures used to create a substitute return for non-filers and assess unpaid income tax. *See* United States' Response to Defendant Howe's First Interrogatories. (Dkt. 194-3.) The United States provided Howe with copies of documents in its possession responsive to Howe's discovery requests. These documents included Account Transcripts and Forms 4340. *Id.*, Response to Interrogatory No. 14; United States' Response to Defendant

---

[20] Nonetheless, as explained above, no amount of discovery concerning the use of push codes, computer systems, or Marler's use of the IRS's computer software or databases is relevant to Howe's records falsification defense. *See also* Mem. Dec. and Order. (Dkt. 177) (denying Howe's motions seeking additional discovery concerning IMF Records, signed summary record of assessments, and source code on the grounds that such information was not relevant to the claims or defenses asserted by the parties).

Howe's First Requests for Production of Documents. (Dkt. 174-5.) The IRS also provided documents in response to Howe's request pursuant to the Freedom of Information Act. (Dkt. 197-2.) This information included Form 23-C Assessment Certificates for the years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013. (Dkt. 197-2.) A Form 4340 Certificate of Assessment and Payment, complete with an assessment date, is alone sufficient to establish that a tax assessment was properly made. *United States v. Townley*, 181 Fed. Appx. 630, 631 (9th Cir. 2006); Mem. Dec. and Order at 12 – 14. (Dkt. 177.)

Finally, Howe contends Marler's declaration should be stricken in its entirety because Marler was improperly proffered to authenticate records Marler falsified, and also as an expert witness under Fed. R. Evid. 702. (Dkt. 214 at 4; 218 at 4.) Howe's first contention is nothing more than a restatement of his meritless affirmative defense. Howe's second contention is similarly meritless, as the Court explained above that Marler's declaration falls within the scope of Fed. R. Evid. 901. Nor does Marler offer expert testimony within the scope of Rule 702 – he simply explains the process by which the IRS collects unpaid income tax from non-filers like Howe.[21] The motion to strike (Dkt. 214) will therefore be denied.

---

[21] To the extent that Marler's explanation of the process for computing unpaid outstanding federal income taxes, penalties, and interest could be considered as falling within the scope of Rule 702, the Court did not rely upon those statements in its analysis of the United States' motion in section 3. *See* Marler Decl. ¶¶11 – 15. (Dkt. 194-5.) To establish a prima facie case in support of tax liability, the United States needs only demonstrate that an assessment has been properly made against a defendant by offering a Certificate of Assessments and Payments. *See United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980) (finding that "the Government established a prima facie case in support of the tax liability…when it introduced into evidence the certified copies of the certificates of assessment" in a case involving liability under 26 U.S.C. § 6672).

3.      **The United States' Motion**

The United States contends that there are no disputes of material fact that Howe earned taxable income for the years at issue and that the IRS properly executed federal tax assessments and issued penalties against him. The United States asserts also that it has valid tax liens on the Subject Property and requests a declaration authorizing it to foreclose on the Subject Property. The Court agrees, and will recommend that summary judgment be granted to the United States on Claims One and Five of the Complaint for the reasons explained below.

A.      **Howe's Liability for Federal Income Taxes, Interest, and Penalties**

Claim One of the United States' Complaint seeks to reduce to judgment the federal tax assessments against Howe for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013. In an action to reduce tax assessments to judgment under 26 U.S.C. § 7402(a), the government bears the burden of proof. *Palmer v. Int'l Revenue Serv.*, 116 F.3d 1309, 1312 (9th Cir. 1997). The government can carry its initial burden "merely by introducing its assessment of tax due." *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). Where the IRS bases its assessment on allegations of unreported income, a presumption of correctness attaches to the assessment if it is supported by "a minimal evidentiary foundation." *Id*. This foundation is established when "some substantive evidence is introduced demonstrating that the taxpayer received unreported income" during the tax years at issue. *Id*.

If the United States carries its initial burden, the burden then shifts to the taxpayer to rebut the presumption by a preponderance of the evidence. *Rapp v. Comm'r*, 774 F.2d

932, 935 (9th Cir. 1985). "[W]hen a taxpayer has overcome the presumption by competent and relevant evidence, the presumption disappears and drops out of the case. Thus, the burden of proving the deficiency reverts to the government." *Keogh v. Comm'r*, 713 F.2d 496, 501 (9th Cir. 1983).

The United States has met its burden to establish the validity of federal income tax assessments against Howe for the years at issue. First, the United States provided evidence demonstrating Howe received unreported income. Marler Decl. Ex. D. (Dkt. 194-9.) Second, the United States provided presumptive proof that the taxes against Howe were validly assessed by submitting IRS Forms 4340, generated under seal and signed by an authorized delegate of the Secretary of the Treasury. These are self-authenticating records admissible into evidence with a presumption of correctness. *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992). The Ninth Circuit has consistently recognized that Forms 4340, which show the dates and amounts of taxes assessed against a defendant, "provide[ ] at least presumptive evidence that a tax has been validly assessed." *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993). *See also United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980) (finding that "the Government established a prima facie case in support of the tax liability…when it introduced into evidence the certified copies of the certificates of assessment" in a case involving liability under 26 U.S.C. § 6672); *United States v. Janis*, 428 U.S. 433, 440 (1976) (Such certificates are presumed correct unless the defendant provides proof to the contrary).

Here, the United States submitted certified copies of the Forms 4340 that were

sent to Howe for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013. Ex. 4.

(Dkt. 194-4.) These forms—as well as the statutory notices of deficiency and supporting

documents—are summarized in the tables above, and presumptively establish that the

IRS validly assessed taxes against Howe for those years. *United States v. Amistad, Inc.*,

No. CV. 90-0265-S-WBS, 1993 WL 370838, at *5 (D. Idaho May 13, 1993) ("Certificate

of Assessments and Payments establishe[] the following: (1) that the federal excise taxes,

penalties, and interest were assessed; (2) that notice and demand for payment of these

taxes, penalties, and interest was properly made (sections 6303(a) and 6321 of the

Internal Revenue Code); and (3) that the taxpayer is presumptively liable for the unpaid

taxes, penalties and interest shown on the Certificate."); *In re Garm*, 114 B.R. 414, 416

(Bankr. M.D. Pa.1990) (certificates qualify as self-authenticating for purposes of Fed. R.

Evid. 902).

Other than via his meritless argument that the United States engages in a sweeping

records falsification scheme to collect income tax from non-filers, Howe has offered no

evidence contradicting the United States' assessments or otherwise raised any issue of

fact. *See* Fed. R. Civ. P. 56(c); Dist. Idaho L. Rule 7.1 ("[I]f a party fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact as

required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the

Court may consider the uncontested material facts as undisputed for purposes of

consideration of the motion….") Instead, Howe challenges his legal obligation to pay

taxes by reasserting arguments he was warned are frivolous, and which the Court

explained above are without merit. He does not offer any evidence that the tax

assessments are incorrect in the amounts the United States claims. Nor is there evidence

that Howe challenged in the Tax Court the Notices of Deficiency or the Certificates of

Assessments and Payments for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and

2013. *See Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Sullivan v. United States*, 618

F.2d 1001, 1008 (3d Cir. 1980) (The burden is on the taxpayer to overcome this

presumption by persuading the finder of fact, by a preponderance of the evidence, that the

income tax assessments are erroneous.). Howe's contention that a vast conspiracy exists

to unlawfully tax him and deprive him of his property are insufficient to overcome the

presumption of regularity.[22] *See Lane v. United States*, 328 F.2d 602, 603 (5th Cir. 1964)

(holding that if no countervailing evidence is introduced, "the trial court [is]…justified, in

fact required, to enter summary judgment for the Government the amount of the taxes

proved to be due.").

    Howe has not disputed the facts underpinning his tax liabilities and therefore has

not rebutted the presumption that that tax assessments against him are valid and correct.

---

[22] A Certificate of Assessments and Payments is entitled to a presumption of correctness. *United States v. Mazzara*, 530 F.Supp. 1380, 1382 (D. N.J.1982) (affidavit by I.R.S. officer detailing defendant's tax liability is entitled to a presumption of correctness), *aff'd*, 722 F.2d 736 (3d Cir.1983); *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir.1992) ("For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and Treas. Reg. 301.6203–1"); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) (Certificate of Assessments and Payments can serve as proof that assessments were actually made); *McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir.1991) (Certificate of Assessments and Payments is admissible evidence for purposes of summary judgment); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir.) (Certificate of Assessments and Payments submitted by the government is accepted as presumptive proof of a valid assessment), *cert. denied*, 493 U.S. 975 (1989); *United States v. Nuttall*, 713 F.Supp. 132, 135 (D. Del.) (assessments listed in Form 4340 are given presumptive effect), *aff'd*, 893 F.2d 1332 (3d Cir. 1989).

*Amistad*, 1993 WL 370838, at *5. The Court finds the record establishes that the assessments of deficiencies with respect to Howe's income tax returns for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013 were made in accordance with all statutory and regulatory requirements, and that there is no genuine issue of fact regarding the sum due in federal income taxes to the United States. *See* 26 C.F.R. § 301.6203–1; 26 U.S.C. § 6203. Consequently, the Court will recommend a finding that, as a matter of law, Howe is liable for federal income tax for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013, and that the United States is entitled to judgment against Howe in the full amount of its tax assessments against him, including civil penalties and interest.[23]

### B.    The United States' Federal Tax Liens Against the Subject Property

Claim Five of the Complaint seeks to foreclose the federal tax liens against the Subject Property and order judicial sale. When a person neglects or refuses to pay taxes that are due, federal tax liens arise on the date of the IRS tax assessments and attach to "all property and rights to property, whether real or personal, belonging to such person," including property acquired after the lien arose. 26 U.S.C. §§ 6321, 6322. Such liens attach to property "held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013).

---

[23] When federal income tax liability is unpaid or underpaid, mandatory interest accrues beginning on the date the return is due and continuing until the liability is paid in full. *See* 26 U.S.C. § 6601(a)(b)(e) (accrual period and interest treated as tax). The interest compounds daily and is determined by reference to a floating interest rate. 26 U.S.C. §§ 6621-6622. When the IRS assesses penalties for underpayment due to negligence or intentional disregard of the rules and regulations, its determination "is presumptively correct and must stand unless the taxpayer can establish that he was not negligent." *Hall v. Comm'r*, 729 F.2d 632, 635 (9th Cir. 1984) (citing *Axelrod v. Comm'r*, 56 T.C. 248, 258 (1971)). *See also* 26 U.S.C. § 6651 (penalty for failure to file tax return or to pay tax).

**REPORT AND RECOMMENDATION / MEMORANDUM DECISION AND ORDER - 29**

The United States Supreme Court has reasoned that, through this mechanism, "Congress meant to reach every interest in property that a taxpayer might have." *U.S. v. Nat'l Bank of Com.*, 472 U.S. 713, 720 (1985). To that end, transferring the property from one owner to another owner does not extinguish a properly recorded tax lien. *See* 26 U.S.C. § 6323(a), (f); *see also U.S. v. Bess*, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes [subject to the burden]." (cleaned up)).

The Court finds that the United States has established Howe is indebted to the federal government because of properly assessed income taxes, penalties, and interest. Further, the Court previously granted the United States' request for judgment on Claim Two, finding that PHI held title to the Subject Property as Howe's nominee or alter ego. (Dkt. 192 at 26.) Federal tax liens in favor of the United States arose against Howe on November 11, 2010, for tax year 2005; June 7, 2010, for tax year 2006; February 6, 2012, for tax year 2008; May 28, 2012, for tax year 2009; July 7, 2014, for tax year 2010; September 12, 2016, for tax years 2011 and 2012; and September 16, 2016, for tax year 2013. Ex. 6, App. B. (Dkt. 194-14.) The United States properly recorded these tax liens with the Boundary County Recorder's office. Marler Decl. Ex. H. (Dkt. 194-13.) Howe does not dispute that he owns the Subject Property. Accordingly, each of these liens are attached to the Subject Property.

Under 26 U.S.C. § 7403, once the Court determines that the United States has valid federal tax liens on the real property of a taxpayer, the Court "may decree a sale of

such property…and a distribution of the proceeds of such sale" according to its findings. 26 U.S.C. § 7403(c); *see also U.S. v. Rodgers*, 461 U.S. 677, 709 (1983) (noting that, although the standard is discretionary, a district court may not refuse to authorize a sale "simply to protect the interests of the delinquent taxpayer"). "All persons having liens upon or claiming an interest in the property involved in such action" must be made parties to the action. 26 U.S.C. § 7403(b). Here, there is no evidence that any other parties claim an interest in the Subject Property other than the named defendants.

In sum, the Court will recommend finding that the United States has valid federal tax liens against Howe for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013 that may be enforced against the Subject Property.

## CONCLUSION

"[N]othing is certain except death and taxes." Benjamin Franklin. As much as Howe would like for this Court to invalidate the entire process Congress enacted to collect unpaid taxes from non-filers— reality, and the law, provide otherwise.

Based on the foregoing, the Court will recommend that the United States' motion for summary judgment (Dkt. 194) be granted, and Howe's cross-motion for summary judgment, as amended (Dkt. 197, 211), be denied. The Court also will order that all other non-dispositive motions be denied. (Dkt. 198, 201, 210, 212, 214.)

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      Plaintiff's Motion for Summary Judgment (Dkt. 194) be **GRANTED**;

2)      Defendant's Cross-Motion for Summary Judgment (Dkt. 197) be **DENIED**;

3)      Defendant's First Amended Cross-Motion for Summary Judgment (Dkt. 211) be **DENIED**;

4)      Judgment on Claim Two be entered consistent with the Court's prior order (Dkt. 192); and,

5)      Judgment on Claims One and Five be entered as follows:

A.      Against Ebenezer K. Howe IV for outstanding federal income tax liabilities for tax years 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013 in the amount of $394,008.60 as of March 9, 2023, plus interest and other statutory additions under 26 U.S.C. §§ 6601, 6621, 6622 that will continue to accrue according to law, less any payments made against the liabilities, until full paid;

B.      Pursuant to 26 U.S.C. § 6321, the United States has valid and subsisting federal tax liens by virtue of the outstanding federal tax liabilities set forth above, on all property and rights to property belonging to Ebenezer K. Howe IV, including the Subject Property, located at 2099 Katka Road, Bonners Ferry, Idaho 83805;

C.      The federal tax liens securing the Subject Property are foreclosed, the Subject Property shall be sold in accordance with 26 U.S.C. § 7403 as

detailed in an order of sale to be proposed by the United States, and the

proceeds from such sale shall be remitted to the United States and applied

to the outstanding federal tax liabilities of Ebenezer K. Howe IV; and

D.      A deficiency judgment is granted to the United States in the amount

of the outstanding tax liabilities not satisfied by the sale of the Subject

Property.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **October 05, 2023**

Candy W. Dale
United States Magistrate Judge

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Defendant's Motion to Compel IRS Expert Marler to Provide Source Code
        & Testify as to IRS Use of Three IMF Codes (Dkt. 198) is **DENIED**.

2)      Defendant's Supplemental Motion to Compel IRS Expert Bradley Marler to
        Provide….& Testify [Doc.198] With Exh. And Declaration in Support
        (Dkt. 201) is **DENIED**.

3)      Defendant's Motion to (Briefly) Re-Open Discovery (Dkt. 210) is
        **DENIED**.

4)      Defendant's Motion Pursuant to FRE 701 to Supplement & Amend My
        Opposition to Gov't Motion for Sum Judg. [Doc.194] (Dkt. 212) is
        **DENIED**.

5)      Defendant's Motion to Strike Marler Declaration (Dkt. 214) is **DENIED**.

**IT IS FURTHER ORDERED THAT** ensuing motion practice is limited to the

filing of one written objection not to exceed twenty pages to the Court's findings and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), Dist. Idaho L. Rule 72.1(b)(2),

and Dist. Idaho L. Rule 7.1; and one motion not to exceed twenty pages seeking

reconsideration of the Court's Order on non-dispositive motions pursuant to 28 U.S.C. §

636(b)(1)(A), Dist. Idaho L. Rule 72.1(b)(1), and Dist. Idaho L. Rule 7.1. The two

allowable motions, and responses thereto, may be combined into one filing not to exceed

forty pages if preferred. No other motions will be allowed or considered, and any filings

contravening the Court's order will be summarily stricken from the record without further

notice.

Dated: **October 05, 2023**

Candy W. Dale
United States Magistrate Judge